UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD KEATS**, *et al.*, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Civil Action No. 13-cv-1524 (TSC) <br> ) |
| **KATHLEEN SEBELIUS**, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiffs Ronald and Kathleen Keats bring this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, against the United States Department of Health and Human Services ("HHS") challenging the agency's denial of Ronald's request for voluntary retirement as arbitrary and capricious.[1] Both parties have moved for summary judgment. For the reasons set forth below, the court will deny both motions without prejudice. *See* ECF Nos. 46, 61.

### I.    BACKGROUND INFORMATION

Keats was a nurse who was appointed as an HHS Public Health Service (PHS) Reserve Corps officer in February 1997. Defs. Statement of Undisputed Facts ("SOF") ¶ 2.[2] "Overseen

---

[1] Ronald Keats is challenging the HHS decision. It is unclear why his spouse, Kathleen Keats, is named as a Plaintiff in this action. Accordingly, references to "Keats" or "Plaintiff" in this opinion refer to Ronald Keats.

[2] Citations to the Defendant's Statement of Undisputed Facts are to facts that are not disputed; while Keats indicates that some of the facts are "disputed" as "immaterial," he has not presented any evidence to dispute any of the facts cited in this opinion.

by the Surgeon General, the U.S. [PHS] [3] is a diverse team of more than 6,500 highly qualified . . . public health professionals." *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 40 n.9 (D.D.C. 2014) (citation omitted). "Commissioned Corps officers are involved in health care delivery to underserved and vulnerable populations, disease control and prevention, biomedical research, food and drug regulation, mental health and drug abuse services, and response efforts for natural and man-made disasters."[4]

In April 2010, an employee at the Aberdeen, South Dakota Federal building, where Keats was assigned, found a compact disc (CD), containing over 2,000 images of child pornography. Defs. SOF ¶ 10. The following month, federal agents seized an external computer hard drive and Keats' federal government-issued laptop computer from his office. *Id.* ¶ 11. A forensic analysis of the external hard drive found images of child pornography, that included filenames such as "ready to be raped again" and "Young Rough and Rape." *Id.* ¶¶ 10-11. Authorities were able to link the hard drive to Keats' government-issued laptop, as well as the CD found in the building. *Id.* ¶ 13.

On the day of the seizure, federal agents interviewed Keats at his home and conducted a search, at which time he turned over four CDs that contained more than 1000 images of child pornography (including 500 images of prepubescent children), as well as video images of Keats masturbating in his government office. *Id.* ¶ 12. During the interview, he conceded that some of the children depicted in the pornography he had downloaded appeared to be underage. *Id.* ¶ 14. The following day, PHS placed Keats on non-duty status with pay and assigned him to home

---

[3]  The Court will refer to PHS and HHS collectively as HHS, unless necessary to distinguish the two.

[4]  https://usphs.gov/aboutus/history.aspx (last visited on April 23, 2019).

duty. *Id.* ¶ 15. According to PHS, federal regulations required that the agency refrain from investigating the criminal allegations to avoid compromising the ongoing criminal proceedings. *Id.* ¶ 16.

Several months later, Keats left his assigned duty station and was designated absent without leave. *Id.* ¶ 17. In December 2010, he was indicted and arrested on three counts of transportation of child pornography and one count of possession of child pornography. *Id.* ¶¶ 18-19. The following month, Keats filed the first of at least eight motions to continue his criminal case. *See United States v. Keats*, 10-cr-10046-CBK (D.S.D.), ECF No. 13; Defs. SOF ¶ 20. The Judge granted the motions, ultimately continuing the matter into 2012. *Keats*, 10-cr-10046-CBK, ECF Nos. 14, 19, 23, 35, 37, 40, 57. In the midst of these continuances, on July 7, 2011, Keats reached nineteen years of service creditable toward retirement. *See* Defs. SOF ¶ 21.

On January 12, 2012, Keats applied for voluntary retirement effective July 1, 2012, which was when he would become eligible for retirement with twenty years of service. *Id.* Although Keats' supervisor endorsed the retirement request, Scott Giberson (a Director-level official) refused to do so. *Id.* ¶ 22; Administrative Record ("AR") 1681-82. Giberson prepared a memorandum explaining that he did not have the authority to deny the request, but had the authority to refer the matter to the retirement board—which he did—with a recommendation that proceedings be stayed pending resolution of the criminal charges. AR 1682. Giberson explained the nature of the charges against Keats and noted that the criminal case had not been set for trial because the court had granted Keats' requests for continuances. *Id.* 1681-82. Giberson further noted that, if proven, the charges would constitute a violation of the public trust, nursing professional standards and Corps values, thereby bringing dishonor to Keats and the agency. *Id.* 1682.

On March 23, 2012, Keats entered into a plea agreement on the child pornography charges; his plea hearing was set for April 17. Defs. SOF ¶ 25; AR 2055-57. Several days later, he filed a motion to continue the plea hearing until after his requested retirement date of July 1, but the judge set the hearing for April 23. AR 2055–57; *see id.* 2058-59.

Around this same time, the HHS Assistant Secretary approved Giberson's request to convene a retirement board for Keats, but stayed proceedings pending final resolution of the criminal case. Defs. SOF ¶¶ 24-26. HHS notified Keats of its decision and, several days before the scheduled plea hearing, Keats filed a grievance, arguing that no adverse administrative actions, nor any adverse criminal conviction or sentencing "will have occurred prior to the requested retirement date." *Id.* ¶¶ 27-28; AR 1700. Keats' grievance letter did not mention that he was scheduled to enter the plea in just a few days. AR 1700-03.

Approximately one month after he pleaded guilty, Keats voluntarily surrendered his nursing license. Defs. SOF ¶ 31; *see* AR 7-11. On June 7, 2012, HHS denied Keats' retirement grievance, citing the "serious nature" of the crimes to which Keats had pled guilty and noting that a final decision would be made after the completion of the criminal proceedings. Defs. SOF ¶¶ 30, 32; AR 1699. Keats became eligible for retirement on July 1 and his sentencing hearing was held on July 23, 2012. *Keats*, 10-cr-10046-CBK, ECF No. 76. The Final Judgment and Commitment Order in his criminal case was entered on July 24, 2012. *Id.*, ECF No. 78.

Giberson subsequently sent a memorandum to the HHS Secretary indicating that the retirement board had been prepared to review Keats' retirement request in the event he had not been convicted; however, because of the conviction, there was no need to convene the board. AR 1707-10. Giberson also opined that it would be "unprecedented to reward" Keats with

retirement benefits, which included access to disability benefits, GI Bill educational benefits and medical treatment at VA hospitals. *Id.* 1709.

On February 6, 2013, the Assistant Secretary cancelled the retirement board proceedings and terminated Keats. Defs. SOF ¶ 39. Later that year, the judge in the criminal proceeding denied Keats' motion to vacate, set aside, or correct the sentence. *Id.* ¶ 41. Keats unsuccessfully appealed the sentence and sought a hearing *en banc*, certiorari with the United States Supreme Court, and post-judgment relief, all without success. *Keats*, 10-cr-10046-CBK, ECF Nos. 90, 96, 99-100, 104.

Keats filed this lawsuit in October 2013, and this court subsequently granted the parties' motion to stay proceedings to allow HHS to reconsider Keats' retirement application. ECF Nos. 1, 42. On September 28, 2015, Giberson sent a memorandum to the retirement board recommending that it deny Keats' retirement request. AR 2592-99. The retirement board subsequently recommended that the agency deny Keats' request and HHS accepted the board's recommendation, finding that his conduct discredited both Keats and the PHS. AR 2600-2602; Defs. SOF ¶ 45.

## II. STANDARD OF REVIEW

In an APA action, the court's role at the summary judgment stage is to decide "as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007). A court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The plaintiff bears the burden of establishing the invalidity of the agency's action. *See Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014). The court's review is "highly

deferential" and begins with a presumption that the agency's actions are valid. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The court is "not empowered to substitute its judgment for that of the agency," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but instead must consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors," *Fulbright*, 67 F. Supp. 3d at 89 (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C.1995)).

### III. ANALYSIS

PHS officers like Keats, who have completed twenty years of service but less than thirty years, "may be retired by the Secretary, with or without application by the officer, on the first day of any month after completion of twenty or more years of active service." 42 U.S.C. § 212(a)(3); Commissioned Corps Instruction ("CC") 43.8.1 § 6-3(c). The retirement regulations further provide that such retirements may occur involuntarily or voluntarily "at the discretion of the Corps." CC43.8.1 § 6-3(a); CC23.8.5 § 6-1.

#### A. Voluntary Retirement Procedures

HHS regulations provide that voluntary retirement with less than thirty years of service "shall be approved only if the services of an officer can be relinquished without adverse effects on the continued and effective operation of" HHS. CC23.8.5 § 6-2. The regulations further provide that when evaluating a voluntary retirement request, the agency shall consider six factors:

    a. "Supervisor's recommendation for approval or denial of the officer's request";

    b. "Effect of the retirement on continued and effective operation of the OPDIV/STAFF/non-HHS organization to which the officer is assigned";

    c. "Whether retirement is in the interest of the Corps and or the Department";

    d. "Years of service creditable for retirement eligibility, exclusive of service in other uniformed services";

    e. "Personal or special circumstances affecting the officer that warrant consideration"; and

    f. "Other factors as identified by the officer, his/her supervisor, the Commissioned Corps Liaison, or the [Commissioned Corps] Director."

CC23.8.5 § 6-2. After considering these factors, the Commissioned Corps Director "will either":

    (1) "Grant the request for retirement"; or

    (2) "Refer the request for retirement to a specially convened retirement board based on the content of the officer's service record."

CC23.8.5 § 8-5(a).

If the Commissioned Corps Director refers a retirement request to the retirement board, the board "shall issue a report that sets forth its finding(s) and recommendations(s) and lists all document(s) and evidence relied upon in reaching its recommendation." CC23.8.5 § 8-5(c)(3). "If the retirement request was not approved by the board, the officer may not be considered for voluntary retirement for 1 year." CC23.8.5 § 8-6(b).

Keats argues that "the only factor" that can outweigh an officer's interest in voluntary retirement is whether the "office can be relinquished without an adverse affect [sic] on the continued and effective operation of the" entity. ECF No. 61, Pls. Summ. J. Mot. 4 (citing CC23.8.5 § 6-2); *id*. 6. In his view, the remaining factors are only relevant to the extent that they help the agency determine whether allowing the retirement will adversely impact the agency. Because the agency did not find that allowing Keats to retire would negatively affect the agency, Keats argues that the agency improperly denied his request.

Nothing about the structure of the voluntary retirement provisions at issue here supports Keats' reading of the regulations,[5] which ignores a separate provision that permits HHS to allow retirements "at the discretion of the Corps." CC43.8.1 § 6-3(a). This provision would be superfluous if the agency was required to grant retirement requests in all instances where there was a finding that the officer's departure had no impact on the agency.

Moreover, while the agency must first decide whether the officer can retire without an adverse effect on the agency before it can rule on a voluntary retirement request, the regulations explicitly provide that there are six additional factors which "shall be considered . . . ." CC23.8.5 § 6-2. While some of the factors involve examining the impact of the requested retirement on agency operations, other factors are entirely unrelated to ongoing operations, such as "personal or special circumstances affecting the officer that warrant consideration," and "other facts as identified by the officer, his/her supervisor" or the agency. *See* CC23.8.5 § 6-2(e) – (f).

This broad discretion to consider a variety of factors beyond operational demands is to be expected when the agency must decide whether to approve a retirement request that will subject

---

[5] The relevant paragraph provides that:

> Voluntary retirement before completing 30 years of creditable service for retirement eligibility shall be approved only if the services of an officer can be relinquished without adverse effects on the continued and effective operation of the Department of Health and Human Services (HHS) Operating Division/Staff Division (OPDIV/STAFFDIV) or non-HHS organization to which the officer is assigned. The following factors shall be considered by the OPDIV/STAFFDIV or non-HHS organization and the Director, Office of Commissioned Corps Operations (OCCO), when an officer requests consideration for retirement . . . .

CC23.8.5 § 6-2.

the retiree to recall,[6] 42 U.S.C. § 212(c), as well as allow the retiree to collect retirement income and take advantage of veteran's benefits, such as health insurance and loans. *See* AR 1709. Accordingly, this court rejects Keats' argument that the "continuing need for an officer's services is the only factor that can outweigh an officer's" request for voluntary retirement. *See* Pls. Summ. J. Mot. 4.[7]

Next, Keats argues that Giberson did not evaluate the six factors when he drafted his memorandum recommending that HHS deny the retirement request, but simply copied the reasoning section from another document. Giberson's memorandum stated:

> Of the six (6) criteria, three (3) are met (a) supervisor approval, (b) no adverse effect on the operations of the IHS and (d) 20 years of credible service. However, the remaining three: (c) best interests of the Corps, (e) special circumstances affecting the officer warranting consideration, and (f) other factors, cannot be answered without knowing the outcome of the trial. Further, if true, the charges would warrant disciplinary action by the Corps and consideration of a less than honorable discharge or dismissal. Therefore, until there is an outcome of Ronald Keats' guilt or innocence, it cannot be determined whether Ronald Keats' retirement is in the best interest of the Corps.

AR 2598. Keats claims that Giberson's explanation that three factors could not be evaluated "without knowing the outcome of the trial" indicates he did not actually analyze the factors because Keats had already entered a guilty plea by the time Giberson authored the memorandum.

The court is unpersuaded by this argument. First, Giberson explained in his seven-page memorandum that he had reviewed the "information in total," including the Administrative Record, supplemental information from the agency, and Plaintiff's Exhibits. AR 2592. Moreover, Giberson accurately described the evidence against Keats, starting with discovery of

---

[6] The law allows HHS to recall certain retired officers to active duty at its discretion. *See* 42 U.S.C. § 212(c); AR 2595.

[7] Keats also cites to the "predecessor Instruction" in support of his argument. Pls. Summ. J. Mot. 4. Since the instruction is no longer in effect, its relevance is unclear.

the CD through Keats' sentencing, including references to the numerous motions to continue and testimony from a hearing held in the criminal proceeding. *See* AR 2592-99. Thus, there is no indication that Giberson failed to review the entire record.

Second, Giberson noted that Keats had requested retirement before his criminal proceedings concluded, and that Giberson had agreed to review the "original retirement request." AR 2592. Giberson also repeatedly used the phrase "[a]t the time of the retirement request" throughout the memorandum. AR 2596-98. Finally, he recommended that the retirement board deny the request "[t]aking into consideration the facts available at the time of the request and the six (6) criteria." AR 2599.

Thus, it is clear that Giberson's memorandum was not intended as a review of the retirement request from a post-sentencing posture. Accordingly, the court is unable to find that Giberson's references to a potential conviction—rather than the final sentencing and incarceration that had already occurred—establish a failure to properly consider the six retirement factors. To the contrary, Giberson thoroughly discussed the facts in his memorandum and applied those facts to the relevant regulations, including the six factors. Therefore, Giberson did not act improperly when he recommended that the agency deny Keats' retirement request.

Lastly, Keats argues that it was unlawful for HHS to deny his retirement request based solely on the nature of his misconduct. He notes that his request was the only one HHS denied between June 1, 2009 and December 31, 2015. In contrast, HHS granted retirement requests for "no less than" four other officers whose prior felony convictions prevented them from being recalled to active duty. Pls. SOF ¶ 25; Pls. Summ. J. Mot. 2, 8. Those officers were convicted of: 1) providing or possession of contraband in prison; 2) aggravated assault; 3) theft of

government property; and 4) drunken or reckless driving, as well as wrongful use and possession of a controlled substance. Pls. SOF ¶ 25.

Keats's fundamental proposition—that HHS did not have the authority to deny his retirement request based on the nature of his misconduct—is clearly inconsistent with the provision discussed above that affords HHS the authority to allow retirements "at the discretion of the Corps." CC43.8.1 § 6-3(a). He is correct, however, to the extent he argues that the agency must exercise this discretion with consistency. The D.C. Circuit has held that Administrative Agencies

> must provide an adequate explanation to justify treating similarly situated parties differently. *Petroleum Communications Inc. v. FCC,* 22 F.3d 1164, 1172 (D.C. Cir. 1994) (and cases cited therein); *Willis Shaw Frozen Express Inc. v. ICC,* 587 F.2d 1333, 1336 (D.C. Cir. 1978); *Ace Motor Freight, Inc. v. ICC,* 557 F.2d 859, 862 (D.C. Cir. 1977). Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld. *Willis Shaw Frozen Express, Inc.,* 587 F.2d at 1336; *Ace Motor Freight, Inc.,* 557 F.2d at 862.

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).

Applying this standard, the court finds that Keats has not established that the denial of his retirement request was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Giberson explained in his memorandum that he did not find the circumstances surrounding the other officers' convictions comparable to Keats'. AR 2598. Only one of the other officers had been sentenced to confinement, but for a short period of 100 days, whereas Keats faced incarceration of five to twenty years. *Id.* Moreover, none of the crimes the other officers committed involved children. *Id.* In light of these findings,

the court concludes that Keats has not shown that the agency violated the APA in denying his voluntary retirement request.

B. Involuntary Retirement Procedures

HHS regulations provide that once an officer attains nineteen years of service, his or her "record will be reviewed . . . to determine if the officer is qualified for retention beyond 20 years or if the record should be referred to an Involuntary Retirement Board." CC23.8.4 § 7-1. The officer "may be considered for involuntary retirement for one or more of the following reasons":

> The officer has engaged in conduct contrary to laws, regulations, standards of conduct, or administrative directives applicable to commissioned officers;
>
> . . . .
>
> The officer has engaged in acts of personal misconduct to the discredit of the Department of Health and Human Services (HHS), the Operating Division (OPDIV)/Staff Division (STAFFDIV) or non-HHS organization to which the officer is assigned, or the Corps . . . .

CC23.8.4 § 6-3, § 6-5.

Keats argues that because he reached nineteen years of service in 2011, the agency was required to review his record for referral to the Involuntary Retirement Board (IRB), which he contends would have found him guilty of "uncharged" misconduct. Pls. Summ. J. Mot. 3. As a result, he would have been involuntarily retired because his conviction qualified as "personal misconduct to the discredit of the Department of Health and Human Services (HHS)." *See* CC23.8.4 § 6-5. He notes that the agency recently involuntarily retired two officers: "one on grounds including 'unexcused absences and failure to comply with uniform requirements,'" and the other "due to no suitable assignment." Pls. Summ. J. Mot. 3; *see* AR 2583, 2590.

HHS responds that "when Keats reached the 19-year service mark, his record obviously had been reviewed because at that time he was already under investigation for potential criminal

conduct." ECF No. 53, Defs. Reply Br. 4. The agency cites to documents from Keats' criminal proceeding that relate only to the criminal case and shed no light on the retirement request at issue here.

The court finds that Keats' argument is based on pure conjecture and does not persuade the court that the agency would have involuntarily retired him, had it considered his record.

However, the agency's response is similarly unavailing. The regulations provide that the agency "will" review an officer's record at nineteen years of service for purposes of involuntary retirement. CC23.8.4 § 7-1. The agency's contention that it "obviously" reviewed Keats' record does not establish that it actually did so. Nor is there evidence that the agency may forego such reviews when an officer is on non-duty status because of a criminal investigation.

"It is axiomatic that 'once a district court has determined that an agency made an error, the district court must generally remand the matter to the agency for further action.'" *Huff v. Vilsack*, 195 F. Supp. 3d 343, 362 (D.D.C. 2016) (citing *Berge v. United States*, 949 F. Supp. 2d 36, 42 (D.D.C.2013); *see Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)). However, "[i]n the relatively unusual circumstance where 'the outcome of a new administrative proceeding is preordained,' a district court may forego the futile gesture of remand to the agency." *Huff*, 195 F. Supp. 3d at 362 (quoting *Berge*, 949 F. Supp. 2d at 42; *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995)).

In this case, it appears that remand would be futile. Approximately six months after his arrest and indictment, on or around July 2, 2011, Keats reached the nineteen-year service mark. Thus, pursuant to the involuntary retirement regulations, HHS had an obligation to review his record and either retain him—which it did—or involuntarily retire him. At that juncture, however, Keats' criminal proceedings were ongoing—having been continued multiple times—

and his trial was not set to begin until three months later. However, the parties have not briefed this issue, and the court declines to rule on the issue without benefit of argument from the parties.

Accordingly, the court will order supplemental briefing on the issue of whether HHS did consider Keats for involuntary retirement or if there is legal support for bypassing this consideration.

Both parties shall address whether remand is appropriate in this action, given the legal authority cited above. Keats is hereby advised that the court is unconvinced by his contention that the involuntary retirement of an officer for "unexcused absences and failure to comply with uniform requirements," and another officer for lack of "suitable assignment," establish that the agency would have also involuntarily retired Keats.

## IV.  CONCLUSION

For the reasons set forth above, the court will deny both motions without prejudice.

Date: April 23, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge